UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD LEE NARLOCK, SR.,

                Plaintiff,                                     Hon. Ellen S.  Carmody

v.

                                                  Case No. 1:11-cv-001

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/


## OPINION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.  On May 23, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (Dkt. #10).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.

1

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

2

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years old at the time of the ALJ's decision. (Tr. 18, 169). He possesses a General Equivalency Diploma (GED) and worked previously as a line production worker. (Tr. 17, 174-75, 183-85).

Plaintiff applied for benefits on November 22, 2005, alleging that he had been disabled since August 15, 2005, due to a back injury, neuropathy, and manic depression. (Tr. 9, 174). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 67-141). On July 9, 2009, Plaintiff appeared before ALJ Mary Ann Poulose, with testimony being offered by Plaintiff and vocational expert, Grace Gianforte. (Tr. 24-66). In a written decision dated July 31, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 9-18). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's lumbar spine, taken October 14, 2005, revealed "early degenerative joint disease involving the mid-lumbar spine." (Tr. 350). On October 27, 2005,

3

Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "developmental narrowing of the lumbar spinal canal" and "regional thickening of the posterior longitudinal ligament at L4-5." (Tr. 291-92, 349). There was, however, "no evidence of fracture, subluxation...loss of vertebral body height...abnormal marrow signal or abnormal cord signal." (Tr. 349).

On December 16, 2005, Plaintiff participated in an arterial doppler examination of his lower extremities the results of which were "abnormal" revealing "a mild degree of hemodynamic insufficiency" in his right lower extremity and a "moderate degree of hemodynamic insufficiency" in his left lower extremity. (Tr. 242).

On May 4, 2006, Plaintiff participated in a nuclear stress test the results of which revealed "non-ischemic electrocardiographic response...normal hemodynamic response...[and] no symptoms of chest discomfort." (Tr. 288).

On November 20, 2006, Plaintiff was examined by Dr. Joseph Sage. (Tr. 238). Plaintiff reported that the pain and weakness in his legs and back was "getting worse" and that "he can only walk extremely short distances before he basically collapses." (Tr. 238). Plaintiff "was advised to try and walk every day, even if his walking distance is very short." (Tr. 238). Plaintiff was "also advised that he must quit smoking cigarettes completely or that his problem will get worse." (Tr. 238).

On January 31, 2007, Plaintiff participated in a consultive examination conducted by Wayne Kinzie, Ph.D. (Tr. 306-09). Plaintiff reported that he was diagnosed with manic depression while in prison after which he began taking medication which made him feel "more normal." (Tr. 306). The results of a mental status examination were unremarkable and Plaintiff was diagnosed

4

with mild bipolar disorder.  (Tr. 307-09).  Plaintiff's GAF score was rated at 55.[1]  (Tr. 309).

On February 1, 2007, Plaintiff participated in a consultive examination conducted by Dr. Justin Northeim.  (Tr. 312-14).  Plaintiff reported that he was experiencing pain in his back and lower extremities as well as difficulty sleeping. (Tr. 312).  A musculoskeletal examination revealed the following:

> No obvious deformities or abnormalities.  No peripheral edema. Positive faint pulses bilaterally.  He has a faintly positive straight leg test bilaterally.  His cervical spine, he has full range of motion to his cervical spine in flexion, extension, side bending left and right.  He has approximately a 10% decreased range of motion in right and left rotation.  His lumbar spine, he has full flexion.  Difficulty with extension approximately 10° to 15° extension, 90° of flexion.  He has 20° right and left side bending.  Grip strength and dexterity are maintained.

(Tr. 313-14).  Plaintiff walked with "a limp to the right side" and exhibited "difficulty with squatting and heel-toe walking," but otherwise the results of a neurological examination were unremarkable. (Tr. 314).

On February 8, 2007, Dr. Jung Kim completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations.  (Tr. 319-32).  Determining that Plaintiff suffered from mild bi-polar disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 320-28 ).  The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing.  (Tr. 329). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily

---

[1]  The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV).  A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning."  DSM-IV at 34.

living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 329).

Dr. Kim also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 315-17). Plaintiff's abilities were characterized as "moderately limited" in nine categories. (Tr. 315-16). With respect to the remaining 11 categories, the doctor reported that Plaintiff was "not significantly limited." (Tr. 315-16).

On October 5, 2007, Plaintiff participated in a CT scan of his abdomen the results of which revealed an "infrarenal abdominal aortic occlusion." (Tr. 451-53). On January 25, 2008, Plaintiff participated in a pulmonary function test the results of which revealed "normal spirometry, lung volumes and diffusion." (Tr. 449).

On April 1, 2008, Plaintiff participated in an electrodiagnostic and nerve conduction examination the results of which revealed "electrodiagnostic evidence of bilateral L5 radiculopathies...associated with some ongoing denervation and would both be considered moderate in severity." (Tr. 446-48). This examination also revealed that "the electrodiagnostic data is adequate to effectively exclude a peripheral polyneuropathy and an isolated peroneal or tibial mononeuropathy on either the right or the left." (Tr. 447).

On April 21, 2008, Plaintiff participated in a stress test the results of which revealed normal left ventricular function, normal wall motion, no evidence of ischemia, and no electrocardiographic evidence of ischemia. (Tr. 392-93).

On May 21, 2008, Plaintiff underwent "aortic stenting and stenting to the iliacs,"

6

performed by Dr. Eric Walchak to treat an "aortic occlusion." (Tr. 385-89).

On August 20, 2008, Plaintiff participated in a sleep study the results of which revealed he was experiencing "severe obstructive sleep apnea." (Tr. 501). Treatment notes dated December 17, 2008, indicate that when using a CPAP machine Plaintiff experienced "no significant respiratory events." (Tr. 563).

On January 15, 2009, Plaintiff was examined by Dr. Walchak. The doctor reported that Plaintiff's "claudication symptoms went away" and that his "ankle-brachial index...was normal" following the May 2008 stenting procedure. (Tr. 385). Plaintiff reported that he "was doing a lot better" and "was able to walk five miles." (Tr. 385). Plaintiff exhibited "normal" muscular strength and his gait was "unremarkable." (Tr. 385). An examination of Plaintiff's nail beds was "normal with normal cap refill." (Tr. 385).

On May 14, 2009, Plaintiff participated in an arterial doppler examination of his lower extremities the results of which revealed "no evidence of...lower arterial occlusive disease" in either of his lower extremities. (Tr. 390).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) peripheral vascular disease, status post aortic and iliac angioplasty with revascularization; (2) obesity; (3) degenerative disc disease with L5 radiculopathy; and (4) obstructive sleep apnea, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P,

---

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

Appendix 1.  (Tr. 11-12).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[3] subject to the following limitations: (1) he requires a sit/stand option; (2) he cannot climb ladders; (3) he can only occasionally stoop, crouch, crawl, kneel, and climb stairs; (4) he must use a handheld assistive device; and (5) he can only occasionally interact with the public.  (Tr. 13).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Grace Gianforte.

The vocational expert testified that there existed approximately 21,500 jobs in the

---

[3]  Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567.  Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday."  20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (Tr. 59-65).  This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

        a.        Plaintiff is not Entitled to a Remand

        In support of his request for relief in this Court, Plaintiff relies, in part, on evidence which was not submitted to the ALJ, but was instead first submitted to the Appeals Council as part of his request to obtain review of the ALJ's decision.  (Tr. 1-5, 580-633).  The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination.  This Court, however, is precluded from considering such material.  In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination.  *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

        If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered.  *Cline*, 96 F.3d at 148.  To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that

the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).  Plaintiff bears the burden of making these showings.  *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

The evidence in question consists of treatment notes and test results from the period from July 30, 2009, through April 16, 2010.  Plaintiff has not requested that the Court remand this matter for consideration of this additional evidence and, therefore, has waived any such argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

Moreover, it is not reasonable to conclude that consideration of this evidence would have resulted in a different outcome.  The evidence in question reveals that on July 30, 2009, one day prior to the ALJ's decision in this matter, Plaintiff participated in a Doppler examination of his lower extremities the results of which revealed "no evidence of left lower arterial occlusive disease" and "no evidence of right lower arterial occlusive disease." (Tr. 611-12).  The results of a September 3, 2010 Doppler examination of Plaintiff's lower extremities revealed that Plaintiff was experiencing "mild" carotid artery disease.  (Tr. 630).  On April 16, 2010, almost one year after the ALJ's decision, Plaintiff participated in another Doppler examination of his lower extremities the results of which revealed that he was experiencing "moderate right lower arterial occlusive disease" and "mild left lower arterial occlusive disease." (Tr. 632).  Accordingly, the Court is precluded from

11

considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

        b.      The ALJ Properly Considered to Plaintiff's Medicaid Eligibility

At the outset of the administrative hearing, Plaintiff's counsel asserted that Plaintiff had recently been approved to receive Medicaid benefits from the State of Michigan.  (Tr. 28). Following the administrative hearing, Plaintiff's counsel submitted to the ALJ documentation to this effect.  (Tr. 575-79).  Plaintiff asserts that the ALJ failed to accord sufficient weight to this determination.

In her decision, the ALJ mistakenly asserted that Plaintiff "failed to provide any documentation from the State of Michigan showing that [he] had in fact received Medicaid benefits." (Tr. 16).  This error is harmless, however, as the ALJ's decision to accord limited weight to this determination is supported by substantial evidence.

The ALJ accorded "little weight" to the fact that Plaintiff was awarded Medicaid benefits by the state noting that while Plaintiff "may meet the require[ments] of the State of Michigan for Medicaid benefits, the issue of Social Security Disability is reserved to the Commissioner." (Tr. 16).  This conclusion is consistent with the relevant Social Security regulations which provide that:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind.  We must make a disability or blindness determination based on social security law.  Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1505; *see also*, *Gaskin v. Commissioner of Social Security*, 280 Fed. Appx. 472, 477 (6th Cir., May 30, 2008) (a finding made by another governmental agency regarding a claimant's disability is not binding on the Commissioner).

Furthermore, the Court discerns no basis for according more than minimal weight to the decision rendered by the State of Michigan because the documentation submitted by Plaintiff regarding such provides absolutely no insight as to the rationale or analysis on which this decision was made. The documentation simply confirms the conclusion that Plaintiff was awarded Medicaid benefits. While it may be reasonable to expect an ALJ to accord a certain amount of weight to a well-reasoned and well-supported analysis supporting such a conclusion, as previously noted, however, an ALJ need not accord any weight to the mere conclusion that Plaintiff is disabled or entitled to other governmental benefits. The Court, therefore, discerns no error in the ALJ's analysis of the fact that Plaintiff was awarded Medicaid benefits.

c.    The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that the ALJ failed to accord controlling weight to certain opinions expressed by his treating physicians. The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

13

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Wilson*, 378 F.3d at 544.  In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.  *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544.  The ALJ is not required, however, to explicitly discuss each of these factors.  *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).  Instead, the record must reflect that the ALJ considered those factors relevant to her assessment.  *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

1.      Dr. Sibella

On January 25, 2006, Dr. Sibella reported that Plaintiff could "never" lift any amount

14

of weight and was unable to repetitively operate foot/leg controls with his lower extremities.  (Tr. 402).  The ALJ discounted this opinion on the ground that it was inconsistent with the objective medical evidence, the doctor's own treatment notes, and Plaintiff's statements.  (Tr. 15).  This assessment is supported by substantial evidence.  There is absolutely no support in the record to support the conclusion that Plaintiff can lift no amount of weight.  As for the doctor's opinion regarding Plaintiff's ability to operate foot/leg controls, such does not conflict with the ALJ's RFC determination.

Moreover, it must be noted that because at the time Dr. Sibella rendered this particular opinion he had only examined Plaintiff on one occasion this particular opinion is not entitled to any special deference.  As is well recognized, the treating physician doctrine "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006).  When assessing whether an opinion from a care provider is entitled to deference, the question is not whether the care provider later established a "treating physician" relationship with the claimant, but instead whether such relationship existed as of the date the opinion in question was rendered.  As the Sixth Circuit has observed:

> But the relevant inquiry is not whether [the doctor] might have become a treating physician in the future if [the claimant] had visited him again.  The question is whether [the doctor] had the ongoing relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*."

*Id.*

Accordingly, "a single visit [to a care provider] does not constitute an ongoing

15

treatment relationship." *Id.* Moreover, "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07. Thus, Dr. Sibella's January 25, 2006 opinion is entitled to no special deference.

On May 11, 2009, Dr. Sibella opined that Plaintiff was disabled. (Tr. 404). The ALJ properly rejected this opinion because the determination as to whether a claimant is disabled is a matter reserved to the Commissioner. As the ALJ also observed, this particular opinion is in conflict with Dr. Sibella's March 16, 2009 opinion that Plaintiff was capable of performing work activities to an extent consistent with the ALJ's RFC determination. (Tr. 399). In sum, the ALJ's rationale for according less than controlling weight to Dr. Sibella's opinions is supported by substantial evidence.

### 2.    Dr. Walchak

On November 27, 2007, Dr. Walchak opined that Plaintiff "is disabled now because he cannot work and cannot walk." (Tr. 518). Again, the conclusion that Plaintiff is "disabled" is entitled to no deference as such is a matter reserved to the Commissioner. Thus, the ALJ's decision to accord little weight to such is proper.

Moreover, as the ALJ observed, this particular opinion was expressed prior to Plaintiff's May 2008 surgery. As Dr. Walchak observed following a January 15, 2009 examination, Plaintiff's "claudication symptoms went away" and his "ankle-brachial index...was normal." Furthermore, Plaintiff reported to Dr. Walchak that he "was doing a lot better" and "was able to walk five miles." (Tr. 385). The results of this examination clearly contradict Dr. Walchak's pre-surgery opinion that Plaintiff was unable to walk. The Court finds, therefore, that the ALJ properly

16

discounted Dr. Walchak's opinion.

        d.      The ALJ Properly Relied on the Vocational Expert's Testimony

Finally, Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question.  While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).  The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 21,500 such jobs.  The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert.  The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.

Date:  February 28, 2012             /s/ Ellen S. Carmody
                                   ELLEN S. CARMODY
                                   United States Magistrate Judge